IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DONNY WILSON,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No. 3:11-cv-1001-HZ

OPINION & ORDER

Merrill Schneider
SCHNEIDER LAW OFFICES
PO Box 14490
Portland, OR 97293

        Attorney for Plaintiff

Jeffrey R. McClain
SOCIAL SECURITY ADMINISTRATION
Office of General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A

PAGE 1 - OPINION AND ORDER

Seattle, WA 98104

Keith D. Simonson
SOCIAL SECURITY ADMINISTRATION
Office of General Counsel
1301 Young Street, Suite A702
Dallas, TX 95202

Adrian L. Brown
U.S. ATTORNEY'S OFFICE
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff, Donny Wilson ("Plaintiff"), seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for additional proceedings.

## PROCEDURAL BACKGROUND

      On December 6, 2007, Plaintiff filed for Title II DIB, alleging a disability onset date of July 16, 2007. R. 18. Plaintiff's application was denied, and he requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration ("SSA"). R. 18. A hearing was held on June 7, 2010, before ALJ Riley J. Atkins. Id. On June 25, 2010, the ALJ found Plaintiff was not disabled before June 1, 2010. Id. The ALJ, however, found that Plaintiff was disabled after June 1, 2010. Id. Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request on June 24, 2011, in turn making the ALJ's June 25,

PAGE 2 - OPINION AND ORDER

2010, decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 422.210. This appeal followed.

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence of the record. Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d),

416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. R. 20, Finding 2. At step two, the ALJ found that "[s]ince the alleged onset date of disability, July 16, 2007, [Plaintiff] . . . had the following severe impairment: lumbar degenerative disc disease . . . ., status post microdiscectomy at L4-5, resulting in cauda equina syndrome and significant chronic pain . . . ."[1] R. 20-21, Finding 3. At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21, Finding 4. At step four, the ALJ found Plaintiff "has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently[,] . . . can sit for up to six

---

[1] "Cauda equina syndrome . . . is a serious neurologic condition in which there is acute loss of function of the lumbar plexus, neurologic elements (nerve roots) of the spinal canal below the

PAGE 4 - OPINION AND ORDER

hours and stand or walk for up to two hours during an eight-hour day[,] . . . was limited to only occasional climbing, balancing, stooping, kneeling, crouching, crawling and overhead reaching with either arm[, and] . . . should avoid concentrated exposure to fumes, dust, smoke, etc . . . ." R. 22, Finding 5.

At step five, the ALJ found Plaintiff not disabled because "[p]rior to June 1, 2010, . . . there were jobs that existed in significant numbers in the national economy that [Plaintiff] . . . could have performed." R. 28, Finding 10.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. Howard, 782 F.2d at 1486. To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

termination (Conus medullaris) of the spinal cord." Opening Br., p. 5, n. 1 (citation omitted).

impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff makes the following assignments of error by the ALJ: (1) the ALJ improperly evaluated the opinions of Steven Anderson, M.D., Tatsuro Ogisu, M.D., David Kim, M.D., and physical therapist Lawrence Andes ("Andes"); (2) the ALJ improperly failed to obtain the testimony of a vocational expert ("VE");[2] and (3) the ALJ did not provide clear and convincing reasons to find Plaintiff not credible. Plaintiff contends that when crediting the erroneously rejected evidence as true, Plaintiff is entitled to an immediate award of benefits.[3]

Defendant concedes that the ALJ's decision was legally erroneous and admits that this case must be reversed and remanded. The ALJ, however, contends that this case should be remanded for additional proceedings because Plaintiff's RFC remains unresolved and because the determination of whether Plaintiff is disabled requires the use of a VE at step five of the sequential evaluation.

### I. Plaintiff's Testimony

Plaintiff asserts the ALJ improperly rejected his testimony. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the

---

[2] Defendant concedes that the "ALJ erred by using the Medical-Vocational Guidelines ('Grids') at step five" and improperly failed to use a VE. Resp., p. 7.

[3] The ALJ declined to give the medical opinion of Dr. Kim, one of Plaintiff's treating doctors, "significant weight." R. 27. Although Plaintiff disagrees with the ALJ's conclusion, Plaintiff fails to make any argument whatsoever as to how or why the ALJ's determination was erroneous. Plaintiff's conclusory assertion that the ALJ improperly discounted Dr. Kim's medical opinion by itself is insufficient. The ALJ's determination concerning Dr. Kim's medical opinion will therefore not be disturbed. R. 625-29.

PAGE 6 - OPINION AND ORDER

ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). "The claimant . . . need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Lingenfelter, 504 F.3d at 1036 (citation and internal quotation marks omitted). "Second, if the claimant meets th[e] first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 416.929(a).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell, 947 F.2d at 345-46). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by

PAGE 7 - OPINION AND ORDER

objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).

At the June 7, 2010, hearing, Plaintiff testified that depending on how "bad a day" he was having, he can only sit for a "half hour" and "maybe sometimes longer". R. 46. Plaintiff also testified that he has to lay down "two or three times a day" for approximately "[h]alf hour, 45 minutes, [or an] hour" because he is "exerted from pain and agony." Id. Plaintiff testified that he walks the dog two or three times a day and testified that after walking the dog, he "usually relax[es] in [his] chair, maybe doze[s] off and take[es] a nap". R. 49. Plaintiff further testified that when he goes on walks longer than "15 minutes to a half hour" or two to three blocks, he has to use his cane. Id.

Plaintiff lives alone in an apartment, but stated that his daughter comes over once or twice a week to vacuum, mop the floors, and clean the toilets and bathroom. R. 50. Plaintiff also stated that his ex-wife does the laundry for him.[4] R. 52. Plaintiff admitted that he is able to go grocery shopping, but stated that his daughter and ex-wife come over and carry the groceries up and down the stairs for him.[5] R. 51. Plaintiff stated he is able to lift five to ten pounds and is able to rinse the dishes and put them in the dishwasher. R. 52. Finally, Plaintiff testified that he does not take "any narcotics" and only takes ibuprofen because he does not want to become addicted to "pain pills". R. 48.

The ALJ found Plaintiff's testimony not credible, concluding that the "record reflect[ed] [Plaintiff] . . . ha[d] little received [sic] treatment for his allegedly disabling symptoms, and what

---

[4] Plaintiff stated that his girlfriend "designed a bag for [him]" so that he could drag his laundry down the stairs and carry them over to his ex-wife. R. 52.

[5] The record indicates that Plaintiff must climb a flight of stairs to get to his apartment. R. 51.

PAGE 8 - OPINION AND ORDER

treatment he received ha[d] been essentially routine and/or conservative in nature and ha[d] been generally successful in controlling [his] symptoms." R. 24. The ALJ further found that "the office visit notes reflect[ed] almost no consideration of [Plaintiff's] allegedly disabling symptoms, except in routinely completing the forms for his disability insurer." Id. The ALJ concluded that the "lack of evidence of any recourse to . . . alternative treatment sources suggest[ed] that [Plaintiff's] . . . symptoms may not have been as serious as has been alleged in connection with this application and appeal" even though "one might expect to see records of visits to the emergency room or to the free or low-cost health clinics . . . and of attempts to use one of the many programs to provide prescription medications to persons of limited means." Id. The ALJ further concluded that Plaintiff was not credible because he was "receiving $1,450.00 per month in disability benefits", which according to the ALJ, was a disincentive for Plaintiff to return to work. Id. Finally, the ALJ found that "despite Plaintiff's allegations of symptoms and limitations preventing all work", Plaintiff's "activities of daily living consumed a substantial part of his day, and [were] not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Id. The ALJ found that Plaintiff was able to "car[e] for himself without assistance, car[e] for his dog, prepar[e] simple meals daily, perform[] light household chores, walk[], driv[e] an automobile, us[e] public transit, shop[] in stores, manag[e] his finances, watch[] movies and television, go[] to car shows, visit[] the beach[,] and socialize with friends and relatives." Id.

Defendant simply quotes portions of the ALJ's opinion, stating that Plaintiff's lack of treatment was a valid reason to discredit Plaintiff's pain testimony, that Plaintiff "received little treatment for his allegedly disabling symptoms", and that the treatment Plaintiff received was

PAGE 9 - OPINION AND ORDER

"essentially routine and/or conservative in nature" and had been "generally successful in controlling [his] symptoms". Resp., p. 7. The Commissioner's reiterations of the ALJ's statements are insufficient. More important, I conclude that the ALJ's adverse credibility finding is supported by neither clear and convincing reasons nor substantial evidence.

Although an ALJ may cite a claimant's pursuit of "conservative treatment", including reliance on over-the-counter medication, in evaluating a claimant's allegations concerning the severity of an impairment, the overwhelming weight of the evidence simply does not support that the ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's testimony under the circumstances here. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). Contrary to the ALJ's finding, the record does not demonstrate that Plaintiff's use of ibuprofen has been "generally successful in controlling" his symptoms. Although the record shows that ibuprofen decreases Plaintiff's pain symptoms, the record also reflects that even 800 mg of ibuprofen has been "ineffective" in addressing Plaintiff's symptoms. R. 23, 545.

Furthermore, it is simply untrue that Plaintiff's treatment has been conservative or routine in nature, or that Plaintiff has received little treatment for his allegedly disabling symptoms. Plaintiff was involved in a traumatic accident involving an all-terrain vehicle ("ATV") in July 2007, in which he fractured his lower back. R. 208, 145. As a result of the accident, Plaintiff was placed in a body cast for one to two months. R. 208, 145. On November 15, 2007, Plaintiff reported to the emergency room, complaining of "back pain" and while on the "medicine floor[,] . . . [Plaintiff] had an episode of bowel and bladder incontinence". R. 302. It was determined that Plaintiff suffered from a L4-5 disk herniation requiring an immediate microdiskectomy, which was performed on September 18, 2007. Id. After Plaintiff's microdiskectomy, he could not walk without a walker and even to this day requires assistance of a cane under certain

PAGE 10 - OPINION AND ORDER

circumstances.  R. 169, 265-70, 440-74.  It is also undisputed that Plaintiff was required to undergo physical therapy from July 2007 to May 2008 after his microdiskectomy.  R. 218-20, 255, 265, 302, 345-50, 352-62, 440.  Suffice it to say, the ALJ's conclusion that Plaintiff only received treatment that was "essentially routine and/or conservative in nature" is not supported by the record.

      The ALJ's finding that Plaintiff's "office visit notes reflect[ed] almost no consideration of his allegedly disabling symptoms, except in routinely completing the forms for his disability insurer" is also unsupported by the record.  Here, the ALJ failed to cite any portion of the record supporting his finding.  More important, although the record shows that disability benefits forms were completed for Plaintiff's insurer, the evidence also shows that Plaintiff's allegations of disabling symptoms were repeatedly considered by Plaintiff's medical providers.  R. 558-59.  Indeed, a number of the medical notes completed by one of Plaintiff's treating doctors, Dr. Anderson, demonstrate that Dr. Anderson routinely performed physical examinations of Plaintiff, conducted nerve conduction studies, and performed an electromyogram ("EMG") examination of Plaintiff.[6]  R. 552, 555, 557, 560.

      The ALJ's finding that Plaintiff's failed to seek "alternative treatment sources" and the ALJ's reliance on Plaintiff's receipt of "$1,450.00 per month in disability benefits" also do not support the ALJ's adverse credibility determination.  Nothing in the record demonstrates that "alternative treatment" for Plaintiff was appropriate or even available.  In addition, the fact that

---

[6] Plaintiff's nerve conduction studies and EMG examination both returned "abnormal" results. R. 552.  In addition, Dr. Anderson specifically concluded that Plaintiff's EMG results showed "nerve root dysfunction".  R. 554.

PAGE 11 - OPINION AND ORDER

Plaintiff was receiving disability benefits from his private insurance carrier by itself does not amount to a clear and convincing reason to discredit Plaintiff's testimony.

Finally, contrary to the ALJ's finding, Plaintiff's daily activities are not inconsistent with Plaintiff's testimony. The ALJ's finding that Plaintiff is able to care for himself "without assistance" misconstrues the record. Although Plaintiff testified that he lives by himself and is able to make his bed and dust, he also testified that his daughter "comes over once or twice a week" to vacuum, mop the floor, clean the toilets and bathroom, and see if Plaintiff needs anything. R. 50. In addition, although the record shows that Plaintiff goes shopping by himself, the record also shows that his daughter and ex-wife come over to carry the groceries up and down the stairs to his apartment. R. 51. The record also shows that Plaintiff does not do the laundry by himself, but requires the assistance of his ex-wife. R. 52.

Plaintiff's "caring for his dog" also does not detract from his credibility. R. 24. Although Plaintiff stated that he walks his dog 2-3 times a day, he also stated that he is unable to walk "very far" and only walks his dog for "a couple of blocks–just down to the end of [his] street and back". R. 56. Likewise, the fact that Plaintiff "prepares simple meals" does not detract from his credibility. R. 24. A careful reading of the record shows Plaintiff stated that he has difficulty cooking "big meals" because "of the standing". R. 165. Furthermore, Plaintiff testified that his daughter cooks "most of [his] meals." Id. The fact that Plaintiff drives, uses public transit, manages his finances, watches movies and television, goes to car shows, visits the beach, and socializes with friends and relatives is simply not inconsistent with Plaintiff's symptoms.

In sum, the ALJ failed to draw logical inferences supported by a rational interpretation of the evidence and did not provide clear and convincing reasons to discount Plaintiff's testimony. Accordingly, the ALJ's adverse credibility determination will not be sustained.

## II. Medical Source Opinions

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ must generally accord greater weight to the opinion of a treating physician than to an examining physician, and greater weight to the opinion of an examining physician than to a reviewing physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). To reject the opinion of a treating or examining physician that is controverted by other treating or examining physicians, the ALJ must make "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). An ALJ may reject a physician's opinion which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations . . . . once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ may also reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." Bayliss, 427 F.3d at 1216 (citation omitted).

Plaintiff argues that the ALJ improperly evaluated the medical opinions of Dr. Anderson, Dr. Ogisu, and Andes. Plaintiff contends that giving the ALJ another opportunity to reject Dr. Anderson's opinions would be inappropriate. See Reply, p. 2.

PAGE 13 - OPINION AND ORDER

Defendant does not directly address Plaintiff's arguments. Instead, Defendant simply asserts that this case should be remanded so that the ALJ may "determine Plaintiff's residual functional capacity in light of all relevant evidence in the case record" and may "obtain medical expert evidence to clarify the nature and severity of Plaintiff's impairments, and to further evaluate the residual functional capacity assessment with the opinion evidence–specifically the medical evidence from Dr. Anderson." Resp., p. 6. Without any articulation whatsoever, Defendant also sweepingly "denies any arguments not specifically addressed." Id., p. 8.

For the following reasons, I conclude that the ALJ improperly considered the opinions of Plaintiff's medical providers.

**A. Dr. Anderson**

Plaintiff contends the ALJ did not give a "specific, legitimate reason" for rejecting Dr. Anderson's medical opinions. Opening Br., p. 5. I agree.

Dr. Anderson repeatedly diagnosed Plaintiff with "incomplete paraplegia" and cauda equine syndrome and repeatedly concluded that Plaintiff was permanently disabled. R. 539-40, 544-46, 548-49, 552, 554-57, 560. Dr. Anderson conducted a Physical Capacities Assessment ("PCA") of Plaintiff, which limited Plaintiff to sitting for only two hours in an eight-hour workday, standing for only one hour in an eight-hour workday, and walking for only one hour in an eight-hour workday. R. 548. The PCA also limited Plaintiff to "occasionally" lifting no more than ten pounds, "occasionally" carrying no more than ten pounds, and "occasionally" reaching above shoulder level. Id. The PCA further stated that Plaintiff can "never" bend, squat, crawl, or climb. Id.

The ALJ assigned Dr. Anderson's opinions "minimal weight", stating that Dr. Anderson "failed to explain how [Plaintiff's] impairments limited his ability to lift and carry, to sit, stand

PAGE 14 - OPINION AND ORDER

and walk, to perform postural or manipulative tasks or to perform sustained work on a regular and continuing basis for a normal eight-hour workday." R. 26. The ALJ also discounted Dr. Anderson's opinions because he "relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported" despite the fact that there were "good reasons for questioning the reliability of [Plaintiff's] subjective complaints." Id. Finally, the ALJ concluded that Dr. Anderson's opinions were "not well supported by medically acceptable clinical and/or laboratory diagnostic studies, including Dr. Anderson's own clinical notes, and [were] inconsistent with other substantial evidence in the case record." Id.

Insofar as the ALJ discounted Dr. Anderson's opinions because they relied on Plaintiff's subjective complaints, such basis was improper because as discussed above, the ALJ's negative credibility finding was erroneous. In addition, the record does not support that Dr. Anderson relied "heavily" or "to a large extent" on Plaintiff's subjective report of symptoms and limitations. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible") (citation omitted). To the contrary, the record shows that when evaluating Plaintiff, Dr. Anderson relied on a number of physical examinations, several nerve conduction studies, and an EMG examination of Plaintiff. R. 539, 544, 545, 549, 551-54, 557, 560. Based in part on his examinations of Plaintiff, Dr. Anderson provided diagnoses of Plaintiff and determined Plaintiff's limitations. Id.

In short, the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record when discounting Dr. Anderson's medical opinions.

PAGE 15 - OPINION AND ORDER

**B. Andes**

An opinion from a physical therapist is considered an "other source" opinion, which the ALJ may reject if he or she provides "germane reasons for discounting that opinion." E.g., Cole v. Astrue, 395 Fed. Appx. 387, 389 (9th Cir. 2010) (citations and internal quotation marks omitted). Because Andes was Plaintiff's physical therapist, his opinion could only be rejected for germane reasons.

Andes performed a two-hour Physical Capacity Evaluation ("PCE") of Plaintiff on July 14, 2008. R. 538. Andes also administered a battery of "reliability tests", including the "Bell Curve Effort, Hand Dynamometer, Borg Scale Rating of Perceived Exertion, Pain Diagram, Pain Scale Rating, and Waddell's Tests", ultimately concluding that Plaintiff was "cooperative during the evaluation", that Plaintiff's "demonstrated level of effort was good", and that Plaintiff's "pain behavior did not appear exaggerated or dramatic." Id. Andes found that Plaintiff was "limited to part time work (e.g. 4 hours/day) in the SEDENTARY range of physical demand as defined by the U.S . Department of Labor". Id. Andes also concluded that Plaintiff was "significantly limited" because he could only sit "occasionally"; he could only reach overhead, bend, kneel, crawl, stair climb, stand, walk and twist "on a minimal basis"; he "did not demonstrate the ability to . . . [squat or balance]"; and he had "low stamina and activity, not capable of full time work".[7] Id.

The ALJ selectively found that Plaintiff was limited to "sedentary work," but rejected Andes's conclusion that Plaintiff was limited to part-time work as it was "based primarily on [Plaintiff's] self-report and . . . unsupported by . . . substantial medical evidence." R. 25. The

---

[7] Based in part on Plaintiff's July 14, 2008, PCE, Dr. Anderson concluded that Plaintiff was permanently disabled from "his own occupation and any occupation." R. 540.

PAGE 16 - OPINION AND ORDER

ALJ's rejection of select portions of Andes's opinion for the reason that they were based on Plaintiff's self-report was improper because as discussed above, the ALJ erred by finding Plaintiff was not credible. The ALJ's general conclusion that Andes's findings were unsupported by substantial evidence, by itself, is not a specific reason germane to Andes. Because the ALJ's determination concerning Andes is not supported by legally sufficient reasons, the ALJ's rejection of select portions of Andes's opinion cannot be sustained.

### C. Dr. Ogisu

Dr. Ogisu performed a physical examination of Plaintiff on December 10, 2008, and concluded that Plaintiff could "sit for at least half the time during an 8-hour day, stand and walk over short distances for half the time during an 8-hour day, and lift and carry up to the stated 20 pounds on an occasional basis." R. 500. Dr. Ogisu also concluded that Plaintiff "should be able to perform gross and fine manipulation frequently" and recommended the use of a cane when "traversing very rough terrain, uneven surfaces, and slopes and when walking over community distances." R. 500-01.

The ALJ expressly recognized Dr. Ogisu's December 10, 2008, medical opinion, but failed to accord it any weight. This was legal error because an ALJ may not implicitly reject the opinions of an examining doctor. See Dogsleep v. Astrue, 266 Fed. Appx. 664, 665 (9th Cir. 2008) (The ALJ may not "ignore the findings of examining and reviewing physicians; the ALJ must either accept the opinions . . . or give specific and legitimate reasons for rejecting them.") (Citations and internal quotation marks omitted). The ALJ's implicit rejection of Dr. Ogisu's medical opinion was legal error and cannot be sustained.

**III. Remand**

The ALJ erroneously assessed Plaintiff's testimony and the various opinions of Plaintiff's medical providers. As a result, Plaintiff's RFC assessment was flawed. In turn, the ALJ's step five findings were also flawed.

The decision whether to remand for further proceedings or for the immediate payment of benefits is within the discretion of the court. See, e.g., McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted). The issue turns on the utility of further proceedings. See Id. A remand for an immediate award of benefits is appropriate when "the record has been developed fully and further administrative proceedings would serve no useful purpose". Strauss v. Comm'r of Soc. Sec. Admin., 635 F3d 1135, 1139 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)). Under the "credit-as-true" doctrine,

> the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id.

The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

Discussed above, the ALJ erred by finding Plaintiff's testimony not credible and by improperly discounting the opinions of Dr. Anderson, Andes, and Dr. Ogisu. When crediting the improperly rejected evidence as true, I conclude there are inconsistences which much be addressed before a disability determination can be made. For example, unlike the limitations

PAGE 18 - OPINION AND ORDER

described in Dr. Anderson's medical opinions, Dr. Ogisu opined that Plaintiff could sit for "<u>at least</u> half the time during an 8-hour day, stand and walk over short distances for half the time during an 8-hour day, and lift and carry up to the stated 20 pounds on an occasional basis." R. 500 (emphasis added). In addition, because the ALJ improperly applied the Grids and failed to obtain the testimony of the VE, there is no indication as to whether Plaintiff is able to perform work existing in the national economy.

On remand, the ALJ is to properly weigh the opinions of Dr. Anderson, Dr. Ogisu, and Andes and properly determine Plaintiff's credibility. If necessary, the ALJ shall reconcile the opinions of Plaintiff's medical providers and Plaintiff's own testimony as they relate to each other and with the other evidence in the record. If necessary, the ALJ shall also engage in steps four and five of the sequential evaluation and properly use a VE should the ALJ proceed to step five of the sequential evaluation.

## CONCLUSION

Based on the foregoing reasons, the ALJ's decision that Plaintiff is not disabled and not entitled to DIB was improper. The Commissioner's decision is REVERSED and this case is REMANDED for additional proceedings.

IT IS SO ORDERED.

Dated this 31 day of Aug, 2012.

_____
MARCO A. HERNANDEZ
United States District Judge